NOSA v. MUNISING, MARQUETTE & SOUTHEASTERN RAILWAY CO.

APPEAL AND ERROR—REVIEW—DENIAL OF NEW TRIAL—MISCONDUCT OF COUNSEL—ABUSE OF DISCRETION OF TRIAL COURT.

The refusal of the trial court to grant a new trial on the ground of prejudicial conduct of counsel peculiarly involves an exercise of judgment upon facts by that court in a discretionary matter, to disturb which it should affirmatively appear to the appellate court from the record that there was a palpable abuse of discretion beyond excuse or reasonable justification.

Error to Alger; Fead, J. Submitted October 18, 1916. (Docket No. 80.) Decided May 31, 1917.

Case by Frank Nosa against the Munising, Marquette & Southeastern Railway Company for personal

injuries.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Clarence B. Randall* and *William P. Belden,* for appellant.

*R. W. Nebel* and *Le Gendre & Driscoll,* for appellee.

STEERE, J.   Plaintiff recovered a verdict and judgment in the circuit court of Alger county against defendant for personal injuries, resulting from being struck by a gasoline car, driven by defendant's foreman, as he was walking along its track on Sunday evening, June 29, 1913.   Plaintiff is an Austrian by birth, at the time of his injury about 60 years of age, had been employed for 27 or more years as a woodsman, and was at this time working "at Frank Doublejack's camp," on the east branch of defendant's line. Defendant is a corporation engaged in the business of a common carrier steam railway company in Alger county and elsewhere.

The fact that plaintiff was seriously injured in some manner while walking along defendant's line to the camp where he worked does not appear to be questioned.   The reasons urged for reversal are concisely stated in defendant's brief as follows:

"This case presents but a single question.   It is not claimed on the part of the defendant that the evidence did not present a question of fact to be submitted to the jury.   No claim is made that there was error in the charge of the court submitting the case to the jury, or in his rulings upon the admissibility of evidence at the trial.   The case is brought here for review upon the questions raised by defendant's motion for a new trial, dealing with matters concerning the conduct of counsel for plaintiff during the trial."

There have been three jury trials of this issue.   The first terminated by plaintiff submitting to a voluntary nonsuit; in the second the jury disagreed; and the

trial here for review resulted in a verdict and judgment for $5,000.

The east branch of defendant's railway in the section where the accident occurred is exclusively a logging road, unfenced and running mostly through timber, with but one train a day, except Sundays. It starts from the main line at Stillman, in Alger county, and extends easterly a distance of 20 miles, with stations or camps at intervals known as Doty, Van Mere, and Haggins, terminating at Cusino. Plaintiff was injured between Van Mere and Haggins, which are about 3½ miles apart. Defendant had a section gang, under a foreman named John Edgar, who lived at Van Mere, caring for that portion of the east branch extending from Doty to Cusino, including two spurs, or short branches, extending northerly, on one of which Frank Doublejack's camp, where plaintiff worked, was located. He had been working but a few days, having gone there with his "partner" but a short time before without their tools, which they had left at a place called Shingleton, about six miles south of Van Mere, where they had previously worked. On the day of the accident, which was Sunday, they went to Shingleton to get their tools, and plaintiff was injured while returning in the afternoon, how and at what time being matters in dispute.

There were several camps, with quite extensive logging operations, on and tributary to the east line, and a number of gasoline and hand cars were used upon it by various parties. There was a worn footpath along the track, running inside or outside the rails according to convenience of footing, which men employed in that section, and others were accustomed to use, and plaintiff was following it that afternoon. This custom was well known to defendant and its employees. Edgar, the section foreman, had and used both a hand and gasoline car. He passed north with

his gasoline car that evening between 7 and 8 o'clock, accompanied by others, and came up to plaintiff at the place from which he soon thereafter was carried, suffering from several injuries, the most serious of which, as stated by the physician who was called to attend him, being a multiplied fracture of the thigh, a broken clavicle, and a large wound in the head. The diametrically opposed testimony of the respective parties as to what then occurred furnishes the issue of this litigation.

In outline it is claimed for plaintiff that in returning home he had, because of a physical necessity, fallen behind his partner, who had gone on, and was again walking along the track alone, carrying his tools, exercising proper precautions by listening and looking back from time to time, when suddenly Edgar's car came upon him from behind, quietly coasting down a grade without light, noise, or other warning, and struck him as he turned, before he could get out of the way, inflicting the serious and permanent injuries from which he suffered; while it is claimed in behalf of defendant that the car was not running fast, that it made considerable noise, that plaintiff was not walking along the track, but lying close beside it, that in the gathering twilight, when first seen, those on the car thought the dark object they saw ahead was a pile of cinders thrown beside the track from an engine, and when on near approach it was discovered to be a man, the car, which only pushed his head from the rail, was quickly stopped, and it was found on investigation that he had evidently been injured in some previous accident, was unconscious, had apparently laid there for some time, as he was covered with dried blood, and steps were taken to have him properly cared for, with medical attendance.

Defendant's charge of prejudicial conduct of counsel, on which reversal is asked, is directed to alleged

unwarranted attacks on the credibility of witnesses, with unfounded impeaching questions, not followed up by affirmative proof; wilful persistence in asking and repeating on cross-examination improper questions, after the court had ruled against them, and including in questions on cross-examination derogatory insinuations, not founded on evidence, relating to the conduct, sincerity, veracity, and motives of defendant's witnesses. These matters were presented to the circuit court in a motion for a new trial, which was denied, without discussing them.

It was undisputed plaintiff was alone when Edgar's car came up to him, and defendant's testimony showed there were two men, two women, and a boy riding on the car with Edgar. If their story was true, plaintiff's was not, and *vice versa*. For its bearing upon this evidence was introduced as to what was said and done by the parties before and after the event, and what others saw and heard. The ample record discloses that the trial spread over a wide range of inquiry, and counsel made protracted use in cross-examination of testimony taken on former trials of the case. Defendant charged, with claimed supporting evidence, that plaintiff was intoxicated on that afternoon, which he denied, and plaintiff's counsel sought to show, by cross-examination and statements claimed to have been made at other times, that the same was true of defendant's chief witnesses. In a case of this character, where the all-important question was the veracity of witnesses, who could not honestly be mistaken as to vital facts upon which they were at variance, a thorough cross-examination was permissible and proper. Frequently the trial court may not be able to foresee, and in fairness ought not to compel counsel to disclose, the purpose of questions asked, and may to a degree assume that apparently imma-

terial or incompetent questions are asked in good faith and will be justified later.

That plaintiff's counsel at times sought to improperly avail themselves of such situation, and to an extent did so by irritating and reiterated questions embodying their views, or asserting facts not proven, is too plain on this record for successful denial. To what extent this was prejudicial to a fair determination of the controversy on its merits is the more serious question. Many of the questions asked and repeated are not unfamiliar, though now less often resorted to or tolerated than formerly. On one page of the record counsel seven times asked a witness, of answers to previous questions, if he was sure about it, or positive of it, or "just as sure about that as about everything else you are testifying here," adorned with the histrionic request, "Please look at me, instead of looking at your counsel." Out of the long cross-examination of Edgar, the following is selected from various pages of the record as prejudicial, because insinuating and assuming facts not proved:

"*Q.* And you knew that you were to blame for it, didn't you?

"*A.* I did not.

"*Q.* And that is the reason why you did not go out to see him, and didn't want to look at him, is because you knew he was badly hurt, and that you were to blame for it?

"*A.* No, sir; it was not. * * *

"*Q.* You never turned a hand—you never helped Nosa at all?

"*A.* I couldn't.

"*Q.* Because you thought he was badly injured, and you were to blame for it?

"*A.* No; that was not my belief at all. * * *

"*Q.* Didn't you say that there were trees there at the side, and that they were 45 feet high?

"*A.* Yes; at the edge of the marsh.

"*Q.* For the purpose of supporting your claim that

there was dew upon the rails, so as to make the rails slippery at that time?

"*A.* Yes; there was.

"*Q.* That is the reason you so testified?

"*A.* Well, the trees were there; that is the reason I testified to it. * * *

"*Q.* Were you drinking that day?

"*A.* No, sir; I was not.

"*Q.* Didn't you drink out of the bottle that Cosky had?

"*A.* No, sir; I did not. * * *

"*Q.* Now, you said that, when you went back and looked at Nosa, after having struck him, his face was covered with mosquitoes and flies. (Objected to.)

"*The Court:* That is sustained, as assuming a fact not sworn to by the witness. * * *

"*Q.* You didn't try to telephone and see if you could call a doctor for him, after you had promised to call a doctor?

"*Mr. B.:* I object to that statement. There is no evidence here that he promised to call a doctor. (Objection sustained.) * * *

"*Q.* And although you were too tender-hearted to look at an injured man, you didn't offer him a bed? (Objected to as argumentative. Objection sustained.) * * *

"*Q.* And then there would be two other phantom cars that you mentioned would be seven?

"*Mr. B.:* I object to the word 'phantom.'

"*The Court:* Objection sustained.

"*Q.* Well, those cars that ran by like the ship in the night; I mean.

"*Mr. B.:* I object to that as being unauthorized, and an unfounded expression.

"*Mr. D.:* Well, I withdraw it."

On cross-examination of a witness for defendant named Sinclair, counsel for plaintiff, after asking the witness if he had not stated it was defendant's fault, and if called as a witness would testify to what he knew of the facts, referred to some business dealing with counsel, to which objection was made, and asked:

"*Q.* And you have said that you would perjure your-

self, if necessary, in order to square up accounts with me, didn't you?"

Objection was made to this, but afterwards withdrawn or withheld, "to let the witness protect himself," and the witness answered:

"No, sir.
"Q. You deny that you said it?
"A. Yes, sir.
"Q. To any one?
"A. Yes, sir."

Although the counsel who asked these questions took the stand and testified as a witness in plaintiff's behalf, no attempt was made to sustain the assumed facts in the impeaching question asked. Under such a state of facts, we are unable to conclude that, if any prejudice resulted, it would, as between examiner and witness, fall upon the latter.

Another instance complained of, in which counsel for plaintiff intruded his personality by interrogation, arose while laying the foundation for impeachment of Edgar by asking him in reference to a designated conversation:

"And when you said that, that clears me, didn't George Losheck say to you, 'Did you knock him down?' And did you not answer, 'Yes, the s—n of a b—h ought to be killed?'"

This was denied, and counsel then asked:

"Did you not, at the time you struck, or immediately after you struck, the plaintiff, and while he was lying down there in the track, and when he asked you to take him some place—put him on the car and take him some place—say to him, 'You Polack s—n of a b—h, I wish I had killed you?'"

This was also denied. Plaintiff subsequently introduced testimony which, if believed, established the fact stated in the questions and denied by the witness; but, following the above questions, counsel proceeded to

interrogate Edgar at length as to the frequency with which he used that epithet, and finally asked:

"Now, the last October term of court, while I was arguing this case to the jury, you used that term as to me, did you not?
"*A.* I don't know whether I did or not.
"Objected to as irrelevant.
"*The Court:* Objection sustained."

Other lines of interrogation of similar nature are referred to and complained of by counsel, but those quoted illustrate fairly their tenor.

Counsel for plaintiff seek in their brief to justify by arguing the merits of the case, and pointing out, as they claim, that the witnesses so examined by them as complained of are shown by the record to have been partisan, hostile, evasive, and contradictory, as indicated both by their inconsistent and irresponsive answers to questions then asked, and by evidence of contradictory statements made at other times and places. While it may be conceded there is some foundation for the latter claim, which would justify a rigid cross-examination, their briefs avoid any direct discussion of the specific delinquencies complained of and are of scant aid.

This case is purely one of fact. It was energetically tried, with some acrimony and direct charges of intentional falsehood by witnesses on each side, supported to a greater or less extent by circumstantial evidence introduced to sustain or refute the charges. There was testimony which tended to, and if believed fairly did, sustain the contention of either side. As before pointed out, control of cross-examinations must necessarily rest largely with the trial court, and it is often a difficult and delicate task for the court to guide the course of a trial within strict limits without error. When in this case objections were made to annoying, and at times improper and unfair, questions or inter-

jections of counsel, they were sustained, and at least twice the court of its own motion interfered to stop and correct counsel. Had the court at any time approved the conduct complained of, or failed to sustain defendant's objections when made, a radically different legal question would be presented. Aside from the conduct of counsel complained of, the case was admittedly tried without error, and fairly submitted to the jury in an impartial charge, explaining its nature and the issues which it was for the jury to decide. It is not claimed the verdict is excessive, but that the injury was not imputable to defendant's negligence. The only error assigned and argued is, not upon any ruling or action of the court during the progress of the trial, but upon refusal of the court after the case was over to grant a new trial on the ground of prejudicial conduct of counsel, and because the verdict was against the weight of evidence. The court had seen and heard the witnesses, watched the case as it developed, had visually before it the appearance and conduct of the parties, and in that particular was more advantageously equipped to understand the general tone and tenor of proceedings, and effect upon the jury of the testimony and conduct of parties, than one only having the printed record to consult. So circumstanced, with time and opportunity to study the testimony, the trial court was unable to find either that the verdict was against the great weight of evidence, which is not assigned as error here, or that the matters complained of operated prejudicially to affect the verdict.

While it is the duty of this court to independently consider the record and pass upon errors assigned, that urged here peculiarly involves an exercise of judgment upon facts by the trial court in a discretionary matter, to disturb which it should affirmatively appear to the appellate court from the record that there was a palpable abuse of discretion, beyond ex-

cuse or reasonable justification. *Detroit Tug & Wrecking Co.* v. *Wayne Circuit Judge,* 75 Mich. 360 (42 N. W. 968). So considering this question, we are not prepared to affirmatively find that the conclusion reached by the trial court must be disturbed.

The judgment will therefore stand affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. PERSON, J., did not sit.